Smith, J.
I. Introduction
Plaintiff Margaret S. Dasha (Margaret) brought this medical malpractice action as guardian and next friend to her brother Joseph A. Dasha, III[3] (Dasha) against defendants Lester Adelman, M.D. (Adelman), The Maine Medical Center (MMC), and Joseph F. Stocks, M.D. (Stocks). This action is before the court on defendants’ motions for summary judgment. For reasons stated below, defendants’ motions are ALLOWED.
II. Background
The undisputed material facts[4] are as follows: On June 13, 1988, while Dasha was a Maine resident, he underwent surgery at MMC to remove a brain tumor. Dr. Stocks, staff pathologist, diagnosed Dasha with a glioblastoma multiforme which is an aggressive and highly lethal form of cancer. Dasha’s prognosis was extremely poor. Under the direction of Dr. Hugh Phelps, Dasha received radiation therapy at MMC beginning on July 5, 1988.
Previously, on or about June 20, 1988, Dr. Phelps had forwarded copies of Dasha’s CAT Scans to Dr. Mison Chun at the New England Medical Center (NEMC) in Boston to determine whether Dasha might be a candidate for radium implant therapy. On July 1, 1988, Stocks sent four slides of Dasha’s tumor to NEMC at Phelps’s request. Dasha visited NEMC on July 14 when he met with Dr. Chun and Dr. Deborah O. Heros. At that time, Dasha was advised to continue his radiation therapy at MMC. Heros and Chun arranged for a scan to occur on August 25, 1988, at which point the radium implants were to be discussed further. Meanwhile, in accordance with NEMC protocol, Chun forwarded Dasha’s slides to be reviewed by defendant Adelman, a neuropathologist with NEMC. Adelman requested that Stocks forward twenty more slides and Stocks complied. On July 29, 1988, Adel-man diagnosed Dasha with an anaplastic astrocytoma (Grade 3/4) which apparently is a high grade tumor requiring aggressive treatment. Dasha’s high dosage radiation continued until August 16, 1988. Dasha subsequently met with Drs. Chun and Heros again at NEMC. The doctors encouraged Dasha to undergo radium implants but he decided against it.
In September, 1988, Dasha moved from Maine to Needham, Massachusetts to live with his sister Margaret. From 1988 through 1990, Dasha’s condition steadily deteriorated.[5] Dasha executed a power of attorney in favor of Margaret on March 2, 1989. In November, 1990, because Dasha was doing better than predicted, Dr. Barbara Shapiro of Newton-Wellesly Hospital asked Dr. Adelman to reexamine Dasha’s slides. Upon reexamination, Adelman determined that Dasha had not suffered from a high grade tumor but instead suffered from a glanglioglioma which is relatively benign and carries a favorable prognosis.
Margaret notified MMC of her intent to file a lawsuit on May 9,1992. On May 22, 1992, Dasha was declared incompetent and Margaret was appointed legal guardian. Margaret filed this suit on behalf of her brother on June 28, 1993, alleging that if Stocks and Adelman had correctly diagnosed Dasha in 1988, he would not have been subjected to the aggressive radiation treatment which caused severe damage to his brain. MMC and Dr. Stocks move to dismiss for lack of personal jurisdiction pursuant to Mass.R.Civ.P. 12(b)(2). Although this court (Barrett, J.) ultimately denied defendants’ motion, while the matter was pending, plaintiff filed suit against defendant MMC in the United States District Court for the District of Maine.
The Maine action was commenced beyond the three-year limitations period set forth in the Maine Health Security Act, 24 M.R.S.A. ‘2501 et seq. According to the Maine statute, a medical malpractice action must be filed within three years after the act giving rise to the injury. 24 M.R.S.A. ‘2902 (1990). The statute does not contain a discovery rule which would toll the limitations period until a patient should reasonably discover the negligence. The District Court (Carter, C.J.) consequently certified the following question to the Maine Supreme Judicial Court: “whether equitable principles estop a defendant from pleading the statute of limitations as a bar to a medical malpractice action when that defendant’s alleged negligent treatment of a plaintiffs brain caused brain damage such that the plaintiff was deprived of the ability to recognize and file a timely cause of action.” Dasha v. Maine Medical *603 Center, 665 A.2d 993, 994 (Me. 1995). Adducing the Maine Legislature’s intent to eliminate the discovery rule in medical malpractice actions, the Maine court answered in the negative and declined to toll the statute of limitations. Id. at 995. The District Court granted MMC’s motion and entered judgment accordingly on January 9, 1996.
Defendants have moved for summary judgment in the present action arguing that this court must apply the Maine statute of limitations to bar plaintiffs claim. Stocks and MMC also maintain that the District Court judgment has preclusive effect on this action under the principles of res judicata.
III. Discussion
Summary judgment shall be granted where there are no genuine issues of material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of establishing the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
A. Res Judicata[6] — Effect of the District Court Judgment
“Under res judicata, a final judgment on the merits bars the parties or their privies from relitigating issues that were or could have been raised in the first cause of action.” Dowd v. Society of St. Columbans, 861 F.2d 761, 763 (1st Cir. 1988). See generally 1 Restatement (Second) of Judgments ‘19 (1982) (hereinafter “Restatement Judgments”). Prior to the advent of the Federal Rules of Civil Procedure, a federal diversity judgment commanded the same res judicata effect as a judgment of the state in which the federal court sits. 18 Wright, Miller & Cooper, Federal Practice and Procedure ‘4472 at 732 (1981). Since the Rules were adopted, however, “[a] persuasive argument can be made . .. that all preclusion consequences of a federal judgment should be measured by the federal rules under [R]ule 41(b).”[7] Id. at 733. In Johnson v. SCA Disposal Devices of New England, 931 F.2d 970 (1st. Cir. 1991), the First Circuit held that federal law controls the preclusive effect of a federal judgment. Id. at 974. See also Restatement Judgments ‘87. Cf. Anderson v. Phoenix Investment Counsel of Boston, Inc., 387 Mass. 444, 449 (1982); Fidler v. E.M. Parker Co., 394 Mass. 534 (1985). Although ithas not directly applied Rule 41(b) to give preclusive effect to previous dismissals based on statutes of limitations, a line of cases, including Johnson, indicates that the First Circuit would adhere to the modern trend to do so.
In Rose v. Harwich, 778 F.2d. 77 (1st Cir. 1985), cert. denied, 476 U.S. 1159 (1986), the First Circuit noted “a clear trend toward giving claim-preclusive effect to dismissals based on statutes of limitations.” Id. at 80. In Kale v. Combined Ins. Co. of America, 924 F.2d 1161 (1st Cir. 1991), cert. denied, 502 U.S. 816, Judge Selya wrote “[i]t is beyond peradventure that the dismissal of a claim as time-barred constitutes a judgment on the merits, entitled to preclusive effect.” Id. at 1164. In support of this statement, he noted the trend recognized in Rose and cited “cf. Fed.R.Civ.P. 41 (b).” Id. Finally, in Johnson v. SCA Disposal Services of New England, supra, the court cited Shoup v. Bell & Howell Co., 872 F.2d 1178 (4th Cir. 1989), in holding that federal law governs the preclusive effect of federal judgments even when jurisdiction is based in diversity. Johnson at 974 n. 11.
The Shoup court, which also found that federal law controls the effect of a federal judgment even if rendered in a diversity action, directly held that Rule 41(b) mandates that a dismissal for untimeliness is “on the merits” for res judicata purposes. Id. at 1179. But see Wright, Miller & Cooper §4441 at 372-73.[8] Through Kale, Rose, and the Johnson court’s reliance on Shoup, it is clear that the First Circuit would adhere to the modern trend and apply Rule 41(b) to preclude actions between the same parties or their privies where a previous suit has been dismissed as untimely.[9] But see Martel v. Stafford, 992 F.2d 1244, 1245-46 (1st Cir. 1993) (where, in dicta, Judge Selya referred to the traditional rule that dismissal based on a statute of limitations does not have preclusive effect in a different jurisdiction which would apply a longer limitations period). See also Restatement Judgments §19 comment f and reporter’s note. Applying the above analysis to this case, Plaintiff is precluded from pursuing this action against MMC.[10]
B. The Substantive-Procedural Distinction
While the forum state generally applies its own rules of procedure, choice of law principles control which State’s substantive law applies to a cause of action. See generally Restatement (Second) of Conflict of Laws §122 (1971) (hereinafter “Restatement Conflicts”). Generally, the law of the forum controls whether an issue is characterized as substantive or procedural. Id.
Defendants contend that according to the Supreme Judicial Court’s ruling in New England Telephone & Telegraph Co. v. Gourdeau Construction Co., Inc., 419 Mass. 658 (1995), Massachusetts no longer applies its own statute of limitations as a procedural rule of the forum court but considers the statute of limitations to be a substantive matter. Because Maine has the more significant relationship to plaintiffs cause of action, defendants argue, choice of law principles require this court to apply the Maine limitations period to bar plaintiffs claim.
In rebuttal, plaintiff contends that Gourdeau, decided March 9, 1995, was not intended to apply retroactively to abort actions already in suit such as the instant litigation. Rather, the court intended the decision to apply prospectively as the language of the decision indicates: “We state for the future that this court’s treatment of the application of statutes of *604 limitations as procedural will no longer be continued.’’ Plaintiff therefore maintains that the court should apply the Massachusetts limitations period, including the discovery rule, as a procedural rule of the forum court.
Whether Gourdeau’s designation of statutes of limitations as substantive applies prospectively or retroactively is irrelevant to the case at bar, however. First, because the Maine limitations period is contained within the Maine Health Security Act itself, it is a substantive matter regardless of the application of Gourdeau In Rose v. Harwich, supra, plaintiff filed a federal action after his state claim for recovery under the eminent domain statute, G.L.c. 79 §14, had been dismissed as untimely pursuant to G.L.c. 79 §16. Judge Breyer concluded that the state court’s decision would have preclusive effect because, under Massachusetts law, where the applicable limitations period was included in the substantive statute which gave rise to plaintiffs right, expiration of the limitations period barred the right as well as the remedy. Thus, the statute of limitations was not merely procedural. Id. at 80-81. See also Alves v. Siegel’s Auto Parts, Inc., 710 F.Supp. 864, 868 (D.Mass. 1989).
This logic applies to the case at bar. In Rose, plaintiff was seeking compensation for a government taking. Under the Due Process Clause of the Fourteenth Amendment, he should have had a right to compensation regardless of G.L.c. 79. Yet, the court found that since the applicable statute of limitations was contained within Chapter 79, it was substantive to bar the right and not merely procedural to bar the remedy only. Similarly, even though plaintiff in this case would have had a common law tort claim in the absence of the Maine Health Security Act, since the statute of limitations is contained within the Act itself, it is substantive and not procedural.
Second, the substantive-characterization of Gourdeau is irrelevant because the Maine limitations period is truly a statute of repose not a statute of limitations.[11] A statute of limitations does not begin to run until the date of the injury or the date when the injury is or reasonably should have been discovered. McGuinness v. Cotter, 412 Mass. 617, 621-22 (1992). A statute of repose, on the other hand, places an absolute time limit on liability “even if the plaintiffs injury does not occur, or is not discovered, until after the statute’s time limit has expired.” Id. at 622 citing Klein v. Catalano, 386 Mass. 701, 702 (1982). See also Alves at 868-69.
Under 24 M.R.S.A. §2902, medical malpractice actions must be commenced within three years of accrual which is defined as “the date of the act or omission giving rise to the injury.” The period does not run from the date of the injury or its discovery. Rather, it runs from the date of the negligence regardless of when the injury occurs or when it is discovered.[12] The statute is clearly one of repose. Massachusetts courts have not deemed such statutes to be procedural. See Gourdeau at 660 citing Cosme v. Whitin Machine Works, Inc., 417 Mass. 643, 645-46, (1994) (“The Cosme opinion is interesting for our purposes because the court concluded that it would take a functional approach in determining the choice of law issue, because statutes of repose were not clearly procedural . . .”).[13] Because the Maine limitations period is not procedural, this court shall employ the functional approach to determine whether it applies.
C. Choice of Law — The Functional Approach
When determining which State’s substantive law applies to a cause of action, a functional approach is utilized. Gourdeau at 660 citing Bushkin v. Raytheon Co., 393 Mass. 622, 631-32 (1985). The question is “which State has the more significant relationship to the occurrence and the parties with respect to the issue of limitations.” Gourdeau at 661 citing Restatement Conflicts §142 comment e (Supp. 1989). See also Restatement Conflicts §145. Cosme v. Whitin Machine Works, Inc., supra, the court was guided by the Second Restatement of Conflict of Laws §§145 and 146 in observing that the law of the state where the injury occurred applies unless Massachusetts has a more significant relationship to the parties and the occurrence according to the principles of §6. Cosme at 646-47.[14] In the case at bar, Massachusetts does not have a more significant relationship to the parties and the occurrence than does Maine.
Plaintiff had resided and worked in Maine for several years prior to June 1988. He sought treatment at MMC in Portland, Maine. Stocks’s misdiagnosis occurred in Maine. Plaintiff sustained his injuries due to the misdiagnosis in Maine. See Cohen v. McDonnell Douglas Corp., 389 Mass. 327, 333 (1983), quoting Brogie v. Vogel, 348 Mass. 619, 621 (1965) (“ordinarily, ‘the substantive law governing an action of tort for physical injury is that of the place where the injury occurred’ ”). Plaintiff came to Boston not to confirm the initial diagnosis but to confer with NEMC doctors about radium implants which he never received.
The only event which occurred in Massachusetts that may have contributed to plaintiffs cause of action was Adelman’s misdiagnosis which plaintiff did not seek. Dasha’s slides were sent to Dr.'Adelman not because Dasha sought a second opinion on the diagnosis but merely as part of NEMC’s protocol. Furthermore, Dasha was in the midst of his radiation therapy when Adelman made his diagnosis. Therefore, it is unclear whether any act in Massachusetts contributed to plaintiffs damages. But even assuming Adelman’s misdiagnosis did contribute to plaintiffs damages, it is clear that Maine has a more significant relationship to the parties and to the cause of action than Massachusetts.
Moreover, the Maine Legislature has expressed a clear intent to cut off medical malpractice actions three years after the date of the negligence in order to reduce malpractice insurance for health care providers. See Choroszy at 807. Compare Franklin v. Albert, 381 Mass. 611 (1980). Maine, therefore, has a policy preference to bar this cause of action. Allowing plaintiff to proceed would frustrate this policy at least with respect to the *605 Maine defendants. Compare Cosme at 648-49. Although Massachusetts has an interest in protecting its citizens’ rights to pursue claims against tortfeasors, Dasha did not move to Needham until after he had received the radiation treatment. Compare id. at 647.
The needs of the interstate system do not clearly favor application of either State’s law. See id. at 649. The protection of justified expectations is not a significant factor in tort situations. Id. at 650. However, certainty, predictability and ease in the determination all favor application of Maine law where its relationship to the parties and the cause of action is much stronger than the Commonwealth’s interest in allowing plaintiff to proceed. Compare Cosme at 650.
In sum, because Maine has a more significant relationship to the parties and the cause of action, because allowing plaintiff to proceed would frustrate Maine’s interest in cutting off suits against health care providers, and because predictability, certainty, and ease in the determination favor application of Maine law, Maine’s substantive law, including its limitations period, must be applied to this case. Collateral estop-pel precludes plaintiff from arguing that the limitations period has not run. See generally Wright, Miller & Cooper §4416 et. seq.
IV. Conclusion
Res judicata bars plaintiff from pursuing a second cause of action against MMC because Fed.R.Civ.P. 41 (b) gives preclusive effect to the judgment of the U.S. District Court. Because the Maine limitations period is a statute of repose, not a statute of limitations, and because it is contained within the Maine Health Security Act itself, choice of law principles dictate whether it applies to the instant litigation. Under the functional approach, the substantive law of Maine, including the limitations period, applies to bar plaintiffs cause of action. Consequently, defendants are entitled to summary judgment as a matter of law.
ORDER
Based on the foregoing, it is hereby ORDERED that summary judgment enter for the defendants, the Maine Medical Center, Joseph F. Stocks, and Lester S. Adelman.

It is unclear from the body of the complaint whether Dasha’s middle initial is “A” or “H.” Because “A” is used in the case heading, this court will refer to Dasha accordingly.

Although some facts were not submitted in accordance with Mass.R.Civ.P. 56(e), all parties agree that the facts set forth are not in dispute for purposes of summary judgment. See generally Correllas v. Viveiros, 410 Mass. 314, 317 (1991), and cases cited.

According to plaintiffs memorandum, since early 1998, Dasha has resided at St. Patrick’s Manor, a nursing home in Framingham.

For purposes of clarity, res judicata refers to claim preclusion and collateral estoppel refers to issue preclusion. See generally 18 Wright, Miller & Cooper. Federal Practice and Procedure §4402 at 7 (1981).

Fed.R.Civ.P. 41(b) provides, in pertinent part, “a dismissal under this subdivision and any dismissal not provided for in this rule . . . operates as an adjudication on the merits.”

Rule 41(b) of the Federal, Massachusetts, and Maine Rules of Civil Procedure all contain the same operative language with regard to the res judicata effect of involuntary dismissals. Maine has interpreted Rule 41(b) to give preclu-sive effect to dismissals based on the expiration of a statute of limitations. See Beegan v. Schmidt, 451 A.2d 642, 644 n.2 (Me. 1982).

Because federal law controls the effect of the District Court’s decision and Fed.RCiv.P. 41(b) gives preclusive effect to the j udgment, this court need not decide whether the decision would have preclusive effect if it were treated as a decision of a Maine state court according to the practice prior to the advent of the Federal Rules of Civil Procedure. However, it should be noted that Massachusetts would generally give a decision of a Maine state court the same finality as Maine would so long as Maine properly exercised jurisdiction. See Wright Machine Corp. v. Seaman-Andwall Corp., 364 Mass. 683, 689 (1974): Cavanaugh v. Cavanaugh, 396 Mass. 836, 839 (1986); Fluhr v. Allstate Ins. Co., 15 Mass.App.Ct. 983, 984 (1983). Since Maine would give the prior decision preclusive effect, see Beegan v. Schmidt, supra, Massachusetts would probably do the same. Thus, even where Massachusetts would have applied its own statute of limitations in the first instance, where a court of competent jurisdiction has previously dismissed an action as time-barred, Massachusetts would give the previous judgment claim-preclu-sive effect.

Plaintiffs claim against MMC appears to be grounded in the theory of respondeat superior based on the negligence of Dr. Stocks. If Stocks were in privily with MMC, he too could invoke the benefit of the prior judgment under the claim preclusion doctrine. However, the record is not sufficiently clear with respect to the privity issue to warrant judgment for Stocks on this basis. See generally Pan American Match, Inc. v. Sears, Roebuck and Co., 454 F.2d 871, 874 (1st Cir. 1972), cert. denied, 409 U.S. 892 (1973); Boyd v. Jamaica Plain Co-operative Bank, 7 Mass.App.Ct. 153, 158 n.9 (1979), rev. denied, 377 Mass. 920. See also Restatement Judgments §87 comment b at 317.

In Choroszy v. Tso, 647 A.2d 803 (Me. 1994), the Maine Supreme Judicial Court recognized that the statute was one of repose by referring to the “three-year period of repose,” id. at 868, and the “statute of repose,” id. at 689.

Under Maine law, therefore, plaintiffs “cause of action accrued on the date of the alleged misdiagnosis, June 13, 1988.” Dasha at 994.

In Alves v. Siegel’s Auto Parts, Inc., supra., the U.S. District Court noted that statutes of repose are substantive under federal law and concluded that Massachusetts would also view them as substantive. Id. at 869. Five years later in Cosme, however, the Supreme Judicial Court noted that it had not yet determined whether statutes of repose were substantive. Cosme at 645. Unlike Cosme, the Aloes court determined that choice of law principles required application of the Connecticut statute of repose instead of Massachusetts law. Alves at 872. But the Cosme court stressed that the facts before it were different from those of Alves. Cosme at 650.

The court noted that both sections require an examination of the following factors of §6 of the Restatement “(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of the interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified'expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.” Cosme at 646 n.6.